IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

UNITED STATES OF AMERICA                                                                                      PLAINTIFF

v.                          No. 5:12-CR-50035-001, 13-50004-001

BRANDON LYNN BARBER                                                                                           DEFENDANT

**ORDER**

Currently before the Court is Defendant Brandon Lynn Barber's motion (Doc. 88)[1] for review of the ruling of Magistrate Judge Erin L. Setser (Doc. 84) revoking Mr. Barber's conditional pretrial release and detaining Mr. Barber pending trial. For the reasons set forth below, the Court AFFIRMS Judge Setser's rulings.

"If a person is ordered detained by a magistrate judge . . . the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order. The motion shall be determined promptly." 18 U.S.C. § 3145(b). "When the district court, pursuant to 18 U.S.C. § 1345(b), acts on a motion to revoke or amend a magistrate's pretrial detention order, the court acts de novo and makes an independent determination of the proper pretrial detention or conditions for release." *United States v. Maull*, 773 F.2d 1479, 1484 (8th Cir. 1985) (quoting *United States v. Fortna*, 769 F.2d 243, 250 (5th Cir. 1985); *see also United States v. Koenig*, 912 F.2d 1190, 1193 (9th Cir. 1990) (district court erred in applying a clearly erroneous standard of review). Although the review is *de novo*, and the Court has the power to hold an additional hearing if necessary and desirable, the Court may also simply review the evidence that was before the Magistrate and make an independent determination of whether the Magistrate's findings are

---

[1] The document numbers refer to the document number in case 13-50004.

correct. *Koenig*, 912 F.2d at 1193 ("Clearly, the district court is not required to start over in every case, and proceed as if the magistrate's decision and findings did not exist . . . The point is that the district court is to make its own 'de novo' determination of facts, whether different from or an adoption of the findings of the magistrate."). The Court finds that a hearing on the instant motion is neither necessary nor desirable.

"A person who has been released under section 3142 of [Title 18], and who has violated a condition of his release, is subject to a revocation of release, an order of detention, and a prosecution for contempt of court." 18 U.S.C. § 3148(a). Mr. Barber was well aware of these potential penalties when he agreed to the conditions of his release and signed the orders setting those conditions. (Doc. 12-4, p. 4 and Doc. 18, p. 4) (stating "YOU ARE ADVISED OF THE FOLLOWING PENALTIES AND SANCTIONS: Violating any of the foregoing conditions of release may result in the immediate issuance of a warrant for your arrest, a revocation of your release, an order of detention, a forfeiture of any bond, and a prosecution for contempt of court and could result in your imprisonment, a fine, or both."). According to statute:

> The judicial officer shall enter an order of revocation and detention if, after a hearing, the judicial officer finds that there is . . . clear and convincing evidence that the person has violated any . . . condition of release; and finds that (A) based on the factors set forth in section 3142(g) of this title, there is no condition or combination of conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community; *or* (B) the person is unlikely to abide by any condition or combination of conditions of release.

18 U.S.C. § 3148(b) (emphasis added).[2]  A finding that a defendant will not abide by any conditions

---

[2] Mr. Barber argues that Judge Setser erred in ordering detention because no testimony or evidence that home incarceration was inadequate under the § 3142(g) factors was presented at the hearing before Judge Setser on June 14, 2013. The statute makes clear, however, that consideration of the § 3142(g) factors, is required only where an order of revocation and detention is based on a finding that there is no condition or combination of conditions of release that will assure that a

of release must be established by a preponderance of the evidence. *United States v. Aron*, 904 F.2d 221, 224 (5th Cir. 1990) (citing *United States v. Gotti*, 794 F.2d 773, 778 (2d Cir. 1986)).

Upon *de novo* review of the pleadings and transcripts of the hearings held on May 6-7, 2013 and June 14, 2013, the Court finds no reason to revoke or amend the detention order entered by Judge Setser. Rather, the Court finds that Judge Setser's order accurately sets forth the relevant facts and that her ultimate findings are well-founded in the law and supported by the pleadings and the evidence in this case.

Mr. Barber identifies two issues for the Court to consider in deciding whether to revoke or amend Judge Setser's order. Mr. Barber argues that the Government failed to establish by clear and convincing evidence that Mr. Barber committed any violations of his release terms.[3] Mr. Barber also argues that, "[e]ven assuming arguendo that there was clear and convincing evidence of a violation, the Magistrate erred in ordering pretrial incarceration when home incarceration has proven to be sufficient to assure compliance with the conditions of release." (Doc. 88, p. 6).

First, the Court affirms Judge Setser's finding that the Government showed, by clear and convincing evidence, that Mr. Barber committed multiple violations of his supervised release by frequently dining out, going to wine bars, and essentially going about his life as usual notwithstanding the order imposing conditions of release, including home detention. Mr. Barber

---

defendant will not flee or pose a danger to the safety of any other person or the community. No analysis of the § 3142(g) factors is required if the Court finds that detention is mandated on the alternative basis that a defendant is unlikely to abide by any condition or combination of conditions of release.

[3] The Court notes that Mr. Barber has previously agreed that he did commit at least one violation of his conditions of release by meeting with Ms. Foodim and a restaurant chef, without prior approval, on April 25, 2013.

then lied to the court in New York, and here, by representing through counsel that he had committed only the one violation on April 25, 2013. The statements of Mr. Barber's counsel about whether or not an admission was made by Mr. Barber as to other violations simply muddied the waters further. However, regardless of whether Mr. Barber admits to the repeated violations or not, the evidence is clear, and the Court is convinced by that evidence, that he did commit them.

There are numerous, almost daily charges reflected on the bank statements provided by Mr. Barber for which the only logical explanation is that Mr. Barber knowingly and intentionally violated his home detention. These charges include charges to restaurants, taxi services, coffee shops, etc., with some charges occurring when the only other cardholder on the account—Mr. Barber's fiancee, Ms. Foodim—was demonstrably not in New York City. Further, many of the restaurant or wine bar charges were in amounts such that it was obvious, even if Ms. Foodim's card was used, she was not dining or drinking alone. The evidence and testimony made clear that numerous charges reflected on Mr. Barber's bank statements represented violations of the conditions of Mr. Barber's release. Based on the evidence, it is the Court's belief that Mr. Barber had a complete disregard for the court-imposed conditions of release and went about his daily life in New York as if he were not subject to the Court's order. The evidence that charges were made in New York City on Mr. Barber's and Ms. Foodim's shared account at a time when Ms. Foodim was not in New York City, and at places for which Mr. Barber had not requested prior approval from probation to attend, is clear and convincing—in and of itself—that Mr. Barber violated his conditions of release on repeated occasions.

Mr. Barber's counsel raised the possibility that Mr. Barber might have loaned his check card to a friend to have extravagant dinners, use taxi services, and drink wine on his dime (or, to be more

accurate, his fiancee or mother's dime, as Mr. Barber appears to be dependent on their financial support at this time).  Mr. Barber's counsel also raised the possibility that Mr. Barber might have been ordering take-out from some or all of the restaurants (although that would still not explain non-restaurant activity).  These mere possibilities are speculative, have no basis in any fact or evidence presented by Mr. Barber, and cannot be logically supported by the evidence presented by the Government.  When weighed against the clear evidence presented by the Government in the form of financial statements and testimony, Mr. Barber's improbable explanations do not sway the Court from its conviction that Mr. Barber committed numerous violations of the conditions of his release.  The Government met its burden.  As Mr. Barber points out, he had no burden to show that he complied with the conditions of release. However, it is also true that the Government did not have the burden of dispelling any reasonable doubt as to whether Mr. Barber had committed a violation.  *See, e.g.*, *United States v. Brown*, 560 F.3d 754, 771 (8th Cir. 2009) (reasonable-doubt standard is more rigorous than clear-and-convincing-evidence standard).[4]  When faced with clear and convincing evidence by the Government that he did not comply with the conditions of his release, Mr. Barber cannot expect the Court to rule in his favor without either competently discrediting the Government's evidence to some degree or otherwise producing evidence or testimony in his own support.  The Court notes that Mr. Barber has not come forward with any other new or additional evidence in support of his instant motion—affidavits, subpoenaed bank records, etc.—that would tend to discredit the Government's evidence of violations or support Mr. Barber's posited

---

[4] Even had the higher standard applied, the Court likely would have found that Mr. Barber violated the conditions of his release, as any doubts raised by Mr. Barber through his assertion of hypothetical possibilities would not be reasonable, absent supporting evidence, in light of the evidence presented by the Government.

explanations.

Second, the Court does not agree with Mr. Barber that home incarceration has proven to be sufficient to assure Mr. Barber's compliance with the conditions of release. Essentially, Mr. Barber argues that, because he stipulated to home incarceration following his previous revocation proceedings for an admitted violation of the conditions of his release, the Government and the Court should be foreclosed from considering any violations of his release previous to that stipulation. To accept Mr. Barber's reasoning would be to incentivize criminal defendants to lie behind the log and be disingenuous with the Court and pretrial services in an attempt to bind the Court to favorable conditions of release based on false or incomplete information. Essentially, Mr. Barber would like to be rewarded for previously lying to the Court in stating that he had only committed a single violation. It is apparent that the Court's acceptance of Mr. Barber's stipulation to home incarceration was premised on the fact that Mr. Barber had committed only one violation of his conditions of release and had been honest in admitting that violation to the Court. Had the Court been aware of the actual repeated, consistent nature of Mr. Barber's violations, the Court would not have accepted Mr. Barber's stipulation to home incarceration, and certainly would have conducted a detention hearing.

Furthermore, evidence of violations of Mr. Barber's home incarceration is not necessary for this Court to make a determination that Mr. Barber is unlikely to abide by any conditions of release in light of Mr. Barber's history of violations and dishonesty. The Government was not required to show violations of Mr. Barber's home incarceration in order to meet its burden. The Government's decision not to spend time and resources investigating violations of home incarceration and present evidence to that effect, when it was unnecessary to do so, by no means convinces that Court that Mr.

Barber will likely abide by his condition of home incarceration. Rather, the evidence remains weighted firmly in favor of the Government that Mr. Barber is unlikely to abide by any conditions of release.

Mr. Barber repeatedly and consistently violated the conditions of his release, showing a flagrant disregard for court-ordered conditions of release and indicating that he is unlikely to abide by any conditions of release the Court might impose. Mr. Barber is charged with serious offenses, and the nature of the charges against Mr. Barber are such that he could commit similar offenses if released to home incarceration. Given Mr. Barber's history in this case, the Court has its doubts as to whether any condition or combination of conditions of release would assure that Mr. Barber would not pose a financial danger to the community. The Court bases its decision to detain Mr. Barber, however, on the fact that, based on Mr. Barber's history of repeated violations of his conditions of release and his failure to be candid during these preliminary proceedings, the Court finds that Mr. Barber is unlikely to abide by any condition or combination of conditions of release.

IT IS THEREFORE ORDERED that the detention order entered by Judge Setser (Doc. 84) is AFFIRMED and Mr. Barber's motion for review of that ruling (Doc. 88), as construed as a motion to revoke or amend the order of detention pursuant to 18 U.S.C. § 3145(b), is DENIED.

IT IS SO ORDERED this 12th day of July, 2013.

/s/ P. K. Holmes, III
P.K. HOLMES, III
CHIEF U.S. DISTRICT JUDGE